St. Louis & San Francisco Railroad Company v. Wyatt.

Opinion delivered October 28, 1907.

1. Carrier—liability for assault on passenger.—A railroad company is not responsible for an assault upon a passenger committed by one of its employees acting beyond the 'scope of his employment. (Page 197.)

2. SAME—FAILURE TO PROTECT PASSENGERS.—A railroad company is not responsible for failure to protect from assault one who was waiting at its station intending to become a passenger on its train if the assault was committed so suddenly that the railroad company could not reasonably have anticipated and prevented it. (Page 198.)

3. SAME—LIABILITY FOR ACTS OF EMPLOYEE.—A railroad company is not liable for the unauthorized act of one of its employees in causing the arrest of a passenger. (Page 198.)

4. SAME—LIABILITY FOR FALSE IMPRISONMENT OF PASSENGER.—A railroad company is not liable for the authorized act of one of its employees in causing the arrest of a passenger if such employee had reasonable cause for believing that such passenger had committed a felony. (Page 198.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; reversed.

*B. R. Davidson,* for appellant.

1. Where a complaint alleges in one count a breach of contract to provide protection for a passenger, and in another count charges false imprisonment, there is a misjoinder, and a motion to strike out one of the causes of action should be sustained. Kirby's Digest, §§ 6079-6081; 69 Ark. 209; 80 Ark. 167. A misjoinder renders the entire declaration bad. 23 Ark. 637.

2. An allegation, in the alternative, that the agent knew, or by the exercise of ordinary care could have known, that the plaintiff was threatened with injury, etc., without alleging facts showing that he had notice of the intended assault, or was negligently ignorant of it, is not sufficient. 70 Ark. 136; 37 Am. St. Rep. 386; 54 *Id.* 80; 24 S. E. 467; 37 S. W. 485.

3. In an action against a railroad company for false imprisonment, it is not sufficient to allege that plaintiff's arrest was caused by persons in the employ of the company, without showing that they were acting in some manner connected with the company's business, and within the scope of their authority, or that the act was authorized or ratified by the company. 59 Ark. 395; 8 Am. St. Rep. 512; 100 Am. Dec. 448; 29 N. E. 952.

4. The relationship of passenger and carrier can not be established by one party alone. Where the party has bought

no ticket, nor made known to the company's agent that he intended to become a passenger, but leaves the station and is standing on the platform, the relationship does not exist. 4 Elliott on Railroads, § 1578 *et seq.*; 12 Am. & Eng. R. Cas., N. S. 180. Where one buys a ticket, and enters the train, and then temporarily leaves the train, he ceases to be a passenger. 36 N. E. 583; 37 N. E. 165; 4 L. R. A. 632.

5. It is in proof that Penn had no authority from the company to make an arrest, and there is no proof that he had apparent authority to do so. An officer making an arrest is presumed to do so in his official capacity, not upon suggestions from others, nor upon authority conferred by the company. 14 Atl. 590; 20 Atl. 188; 50 N. E. 540; 30 Am. & Eng. R. Cas. N. S. 774.

6. Before the company can be held liable, it must be shown that the party committing the assault and the one causing the arrest were acting within the scope of their employment. Hence the first, second, third, and fifth instructions requested should have been given. 8 Enc. Pl. & Pr. 848, 1.

*Sam R. Chew,* for appellee.

1. Both counts of the complaint sound in tort, being for personal injuries, and were properly joined. Kirby's Digest, § 6079; 33 Ark. 316.

2. The relation of passenger and carrier arises when the passenger goes into the waiting room of the carrier or upon its station platform with the *bona fide* intention of becoming a passenger. 3 Thompson on Negligence, § 2638. And that relation would not cease if one had bought a ticket, boarded a train and then temporarily left it. 102 S. W. 198 (Ark.)

3. The law confers the power upon carriers to protect persons in their cars and at their stations, and makes it their duty to make and enforce rules for the protection of those who go to their stations for the purpose of becoming passengers. Kirby's Digest, § 6606; 70 Ark. 136.

4. The evidence was sufficient to establish the agency of Penn, and to show that he was acting within the scope of his employment. 75 Ark. 579. No offense having been committed in the presence of Goss, the officer, he had no authority to make

the arrest without a warrant; and, no felony having been committed, Penn was without authority to arrest. It was therefore illegal. Kirby's Digest, § § 2119-20.

Wood, J. Bertie Wyatt, a young man nineteen years old, in company with Arthur Wood, another young man, on the 15th of October left his home to attend a circus at Ft. Smith. He carried with him a black slicker. After the circus they went to the depot to purchase a ticket to Van Buren over appellant's road. Appellee asked the ticket agent when the train was due, and he replied at six o'clock, but informed appellee that the train was an hour and a half late. Appellee then left the ticket office without purchasing his ticket, went out of the door, met some companions not far from the door and near the corner of the building, was standing leaning against the wall talking to these parties when one Davis, a switchman in the employ of appellant, came up, and began cursing appellee, and accused him of stealing his slicker, and pounded him over the head with his lantern. He hit appellee over the left eye; made a wound which bled profusely; knocked appellee down. Appellee ran around the trucks on the platform, all the while calling for help, the man still after him and pounding him with the lantern, and almost knocking appellee senseless. Appellee then ran into the waiting room and back to the water cooler, between the ticket office and the stairs, when and where a man by the name of Penn came, and took hold of appellee's arm, and carried him into the baggage room, where there was a policeman, and Penn told the policeman to take charge of appellee. Penn told the policeman it was for "*suspicious* larceny," or something of the kind, about the slicker. He said to the policeman: "Take these young men; they are charged with stealing a man's coat." The policeman carried appellee and his companion, Arthur Ward, to jail, where they remained for twelve or sixteen hours. Appellee had the money to purchase his ticket, and intended to do so and to take the appellant's passenger train to Van Buren.

Penn was appellant's special secret service agent. It was his duty to look after criminal matters for the appellant. He looked after anything that was stolen out of the box cars or the stations; he had authority to inquire into complaints of larceny about the station. When any trouble came up about the

station, it was his duty to investigate the facts, and report the matter to the civil authorities. He had no power to make arrests himself. That was not in the line of his duty. But he was expected to report matters to the officers when trouble came up, and in this way he caused arrests to be made.

Davis, the switchman, who did the injury to appellee, was off duty at the time; he had quit work. He worked on the yards; had no control over the station or passengers. It was his duty to look after switches. He had a black slicker, and, on missing it from his engine, he started out through the crowd to look for it, and when he came upon appellee with the slicker he supposed it was his and began to pound appellee in the manner described.

Davis was also arrested by the policeman, but was not put in jail, but simply directed to appear before the police court. The ticket agent made no effort to stop the fight, but he testified that he had no opportunity to do so. When the trouble first began, however, some one in the ticket office told the special secret service agent, Penn, that there was about to be a fight or trouble on hand, and that he "had better get busy." Appellee was discharged by the police court from the charge of larceny. The above are substantially the facts stated in brief (and in the strongest light for appellee) upon which he predicates his suit against appellant, alleging two causes of action, one for failure to protect a passenger from assault and one for false imprisonment.

1. A majority of the court is of the opinion that these facts do not constitute a cause of action against appellant. Davis, the switchman who made the assault, was acting entirely beyond the scope of his employment in so doing, and the appellant was in no manner chargeable with his unlawful acts. Nor was appellant liable, under the proof, for failing to exercise ordinary care to protect its passengers, and those intending to become passengers, from insults and injuries of the kind here complained of. The assault upon appellee was so sudden that appellant could not reasonably have anticipated and prevented it. Nor, in the exercise of ordinary care, could it have done more than it did to quell the trouble after it began. Appellant's secret service agent was on the ground. It was his duty to have pre-

vented the trouble, if possible. He testifies: "Was in Ft. Smith on the day of the circus; was at the station; heard some disturbance; I was in the ticket office at the time; was talking over the telephone. Mr. Milligan and Mr. Robinson were in the office. They looked out the window and said: 'There is a fight or something out here, and you had better get busy.' I hung up the receiver, and started promptly, and met one of these young men at the waiting room door, and noticed he had some blood on his face and hands, and said, 'What is the matter?' and he said a man struck him with a lantern." Other witnesses show that the crowd was dense, and the attack so sudden they could not have prevented it, had they tried. This evidence is undisputed, and it shows that the rencounter was on and off so quickly that the failure of appellant to prevent it, or to stop it after it commenced, was not actionable negligence.

A majority of the court is of the opinion that the court should have given appellant's second request for instruction.*

2. We are of the opinion that the undisputed evidence shows that the special agent, Penn, had no authority to make arrests, and that if he arrested appellee he acted beyond the scope of his employment, and the appellant company is not liable therefor. Even if it may be said that appellee was arrested at his instance and request, and that such arrest was in the line of the special agent's employment, appellant would not be liable therefor, provided its special agent exercised ordinary care, and there was probable cause for having appellee apprehended. There was certainly evidence to warrant the submission of the question to the jury as to whether or not there was probable cause to believe that appellee had committed the crime of larceny. The court erred in refusing to give appellant's third request for instruction.† The court, having refused this

---

*2. I charge you that the evidence is not sufficient to warrant a recovery under the first cause of action set forth in the complaint. You will therefore find for the defendant on said first cause of action.

†3. I charge you that the evidence is not sufficient to warrant a recovery on behalf of plaintiff in the second cause of action. You will therefore find for the defendant in the second cause of action.

instruction, should certainly have given subdivisions (a) and (b) of appellant's fifth request for instruction.‡ For the errors indicated, the judgment is reversed and the cause is remanded for new trial.

---

‡5th. I charge you that the second cause of action is for an alleged unlawful imprisonment. To sustain this cause of action it is necessary for plaintiff to prove:

(a) That the arrest was procured by special agent Penn, an employee of the company acting within the scope of his employment. If the proof fails to establish this, you will find for defendant.

(b) The plaintiff must prove that the special agent Penn had no reasonable or probable cause for believing that plaintiff had stolen the coat.