ARKANSAS NATURAL GAS COMPANY *v.* LEE.

Opinion delivered November 16, 1914.

1.    MASTER AND SERVANT—LIABILITY FOR SERVANT'S ACTS.—The test of a master's liability for wrongful acts of its servants, is whether the act was done while carrying out the purpose and object of the master's business.

2.    MASTER AND SERVANT—TORTIOUS ACT OF SERVANT—LIABILITY.—For a master to be liable for a tortious act of its servant, the servant must be engaged in the master's business, and the tort must be committed while he is carrying out such business.

3.    MASTER AND SERVANT—TORTIOUS ACT OF SERVANT—LIABILITY—SCOPE OF EMPLOYMENT.—Plaintiff, in charge of a department of defendant corporation's work, was assaulted and injured by an assistant

in another department of said defendant, in pursuance of a conspiracy to drive plaintiff from defendant's employ. The party making the assault and the other employee with whom he conspired, having no authority whatever over the plaintiff in the defendant's business, *held*, the act of assault was outside the employee's authority and that the defendant was not liable therefor.

4. MASTER AND SERVANT—SAFE PLACE TO WORK—TORTIOUS ACT OF SERVANT.—When there is a duty on the part of a superior servant to furnish for the master a safe place in which the inferior servants are to do their work, yet if the superior steps aside from the performance of his master's duties and for his own purposes commits a wrongful act which injures an inferior servant, the master is not liable.

5. MASTER AND SERVANT—ASSAULT BY SERVANT.—No liability can be imputed to a master in respect to an assault committed by a superior servant upon another, which had no relation whatever to the normal functions of the superior servant.

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; reversed.

*Moore, Smith & Moore,* for appellant.

1. The assault was not in furtherance of the master's business, nor within the scope of the servant's employment. It was an independent tort. Wood on Master and Servant, § § 279, 307; 75 Atl. 277; 60 Vt. 427; 13 Atl. 569; 93 Ark. 402; 97 *Id.* 24; 60 Vt. 427; 13 Atl. 569; 162 Mass. 319; 75 Ark. 579; 77 *Id.* 606; 20 Tex. 191; 95 *Id.* 534; etc.

*Henry Berger* and *Mehaffy, Reid & Mehaffy,* for appellee.

Snyder and Bronsell were vice-principals. charged with the duty of superintendence. Lee was under their direction and control. When Snyder ordered Lee to come from Malvern to inspect the work of Cook in the removal of the telephone, this was in the scope of Snyder's authority. The assault upon Lee by Bronsell, pursuant to a previous understanding with Snyder, was a mere continuation of the act of bringing Lee from Malvern and into the office of the company. The initial act which culminated in bringing Lee into the office of the company was, unquestionably upon the company's business and

within the express authority of the superintendent, and this act was continued into the assault itself. The company is liable. 93 S. W. 598, 600; 106 S. W. 536; 104 S. W. 536; 70 L. R. A. 738, 740; 7 L. R. A. (N. S.) 929; 18 So. 922; 96 Ark. 365; 4 L. R. A. (N. S.) 506.

McCULLOCH, C. J. The plaintiff, T. B. Lee, sues to recover compensation for personal injuries received while he was an employee of the defendant, Arkansas Natural Gas Company, and this is an appeal from a judgment in plaintiff's favor. Defendant was engaged in constructing a gas pipe line from the oil fields in Louisiana to the city of Little Rock, and plaintiff and one Bronsell were both employees of the defendant. Bronsell made an assault upon plaintiff at Hope, Arkansas, and inflicted serious personal injuries. Plaintiff was employed by the defendant as a superintendent of telephone construction, it being necessary, it seems, to operate a telephone along the line of construction of the gas pipe line; and plaintiff's department was a separate one from the construction department, in which Bronsell worked. The defendant was a foreign corporation and its business in Arkansas was in charge of one Dally, as general manager, who had general superintendence over all the business in the State, with sole authority to employ and discharge heads of departments. H. L. Snyder was general superintendent, with authority to look after the construction work, and Bronsell was his assistant. The evidence shows that Snyder or, in his absence, his assistant Bronsell, had authority to call upon or to make requisition upon plaintiff, as the superintendent of the telephone department, for work in the latter's department in aid of the construction of the pipe line. Neither Snyder nor Bronsell had any further authority over the plaintiff. They did not employ him and had no authority to discharge him.

The assault by Bronsell on plaintiff occurred on January 8, 1912. The evidence warrants a conclusion that there was ill feeling between the two men, or rather that Bronsell harbored ill feeling against the plaintiff for

some time prior to the time the assault was committed. They had a conversation over the telephone a few days prior to the day of the assault, in which, according to the evidence adduced by the plaintiff, Bronsell threatened plaintiff with personal violence. This conversation occurred on January 5, while plaintiff was at Hot Springs and Bronsell at Malvern. On the night of January 7, Snyder called the plaintiff over the telephone at Malvern and requested him to come to Hope to inspect the work being done there by Cook, the plaintiff's assistant. Pursuant to that request, plaintiff went to Hope on the 8th and found Snyder and Bronsell together in the company's office. There is evidence to the effect that a few minutes before plaintiff entered the room a conversation between Snyder and Bronsell was overheard, in which they agreed that they would "get Lee down here and beat him up and he will leave the service of the company" and that they would thus get rid of him. Plaintiff passed through the room and immediately went to the room where Cook, his assistant, was at work removing the telephone, and Bronsell followed him into the room and assaulted him. The evidence on the part of the plaintiff tends to show that the assault was unprovoked and that very serious injuries were inflicted.

The court submitted the case to the jury upon the following instructions, given at the request of the plaintiff:

"1. You are instructed that an assault committed by an employee of a corporation in the course of his employment and for the purpose of advancing its interests and in pursuance of his agency is an act done within the scope of his employment for which such company will be liable, although it neither authorizes nor ratifies such act, and if you find from the evidence in this case that H. L. Snyder and W. F. Bronsell were superintendent and assistant superintendent, respectively, in charge of the management of the business of the defendant company at its office at Hope, Arkansas, and as

such had control and direction of the work and employment of the plaintiff, Lee, and that his employment in the service of the company was objectionable to them, or either of them, as not being conducive to the interests of the company, and in order to induce him, or intimidate him, into voluntarily quitting the employ of the company, they conspired together and inveigled him into the office of the superintendent of the company and there, they, or either of them, in pursuance of such common purpose of causing him to quit the employment of the company, assaulted and beat the said plaintiff, the defendant would be responsible therefor, and your verdict shall be for the plaintiff.''

"2. You are instructed that an employer who puts an agent in a place of trust and responsibility or commits to him the management of his business, is responsible when the agent or employee, acting within the scope of his authority, through lack of his judgment or discretion, or under the influence of passion, inflicts an unjustifiable assault upon another, even though he go beyond the strict line of his duty or authority.''

"3. You are instructed that it is not necessary, in order to fix the liability of the defendant company, that Bronsell should, at the time of the injury, have been acting under the orders or directions of the company, or that the company should know that Bronsell was to do the particular act which produced the injury, if any, but it is sufficient if you find from the evidence that the act was within the scope of his employment, and, if so, the company is liable, though Bronsell acted wilfully and in direct violation of his orders.''

It will be seen from these instructions that the theory of the plaintiff's counsel is that the defendant is liable because Snyder and Bronsell conspired together for the purpose of assaulting the plaintiff in order to force him out of the service of the company. This contention is, we think, wholly untenable, and according to the undisputed evidence in this case there is no liability fixed upon the company, either upon that or any other theory.

The principles of law upon which the master is responsible for injuries to his servant are elemental. Those applicable to the facts of this case have been stated in repeated decisions of this court.

(1)   In the case of *Sweeden* v. *Atkinson Improvement Co.,* 93 Ark. 397, we said: "It will thus be seen that the test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether it was done while carrying out the object and purpose of the master's business; for if the act was done without authority and solely for purposes exclusively the servant's, then the master is not liable during such time that such act was done. During such time he stepped aside from his master's business and his master's employment, and for his act the master was not liable."

(2)   In *St. Louis, I. M. & S. Ry. Co.* v. *Grant,* 75 Ark. 579, where a railway company was held liable for the tortious act of one of its servants in making an assault upon a third person, the court said: "It is certain, however, that the agent must be engaged in the principal's business, and the tort must be committed while he is carrying out such business."

The principle is announced and illustrated in other cases. *Peter Anderson & Co.* v. *Diaz,* 77 Ark. 606; *St. Louis & S. F. Rd. Co.* v. *Wyatt,* 84 Ark. 193.

The controlling principle was stated by Judge Mitchell, speaking for the Supreme Court of Minnesota, in the case of *Morier* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn. 351, as follows: "Therefore, the universal test of the master's liability is whether there was authority, express or implied, for doing the act; that is, was it one done in the course and within the scope of the servant's employment? If it be done in the course and within the scope of the employment, the master will be liable for the act, whether negligent, fraudulent, deceitful, or an act of positive malfeasance. But a master is not liable for every wrong which a servant may commit during the continuance of the employment. The liability can only occur

when that which is done is within the real or apparent scope of the master's business. Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment.''

(3) Now, the undisputed evidence in this case is that neither Snyder nor Bronsell had any authority to discharge the plaintiff. They were in separate departments; and while Snyder had authority to make requisition upon the plaintiff, as the head of the telephone department, and to call upon him to perform service in the aid of the general construction work, yet he had no general control over his movements or any authority to discharge him. Therefore a conspiracy to bring about an assault upon the plaintiff for the purpose of forcing him out of the service would be entirely beyond the scope of the authority either of Bronsell or Snyder. They were acting in response to their own personal impulses and not in any sense in furtherance of their employer's business. But even if Snyder had authority to discharge the plaintiff, we are still of the opinion that the assault upon the latter would have been outside the scope of that authority. It would not have been either within the actual or apparent scope of that authority, for if Snyder had the power of summary dismissal, it would not come apparently within his power to commit an unlawful act in order to compel, or induce the plaintiff to voluntarily resign.

(4) It is not contended by learned counsel for plaintiff that the facts of this case tend to show any violation of the master's duty to furnish a safe place for its servants. In the first place, there is no testimony showing that there was any duty on the part of Snyder or Bronsell to furnish the plaintiff a safe place. He was the head of his own department, and was, at the time of the assault upon him, superintending the work of his own assistant. Moreover, the adjudged cases hold that

where there is a duty on the part of the superior servant to furnish for the master a safe place in which the inferior servants are to do their work, yet if the superior steps aside from the performance of his master's duties and for his own purposes commits a wrongful act which injures the servant, the master is not liable.

This principle is clearly recognized by this court in the recent case of *St. Louis & S. F. Rd. Co.* v. *Rie,* 110 Ark. 495, where we quoted with approval the following statement of the law laid down in a Texas case: "For reasons of public policy, the law holds the master responsible for what the servant does, or omits, in conducting the master's business, because the master has voluntarily substituted for his personal management and supervision that of the servant. But the law also recognizes that the servant is still an independent and responsible being, with capacity, which the master can not affect or control, to engage in projects of his own, and does not include in the responsibility laid upon the master, liability for those acts of the servant which are but the exercise of his freedom about his own affairs. The fact that the servant, in pursuing his own business or pleasure, neglects, also, to perform some duty which rests upon the master, may make the master responsible if injury fall upon another as the consequence of that neglect; but that is a very different proposition from that maintained by plaintiffs, asserting liability for an injury resulting, not from the mere neglect, but from the positive personal wrong, of the servant. *Galveston, H. & S. A. Ry. Co.* v. *Currie,* 10 L. R. A. (N. S.) (Tex.) 367."

(5) That principle is announced in many other cases. Mr. Labatt, in applying this rule to cases where a servant is injured by the assault of one of his superiors, has this to say: "No liability, of course, can be imputed to the master in respect of an assault which had no relation whatever to the normal functions of the superior servant." 4 Labatt on Master and Servant, § 1466.

*Sullivan* v. *L. & N. Rd. Co.,* 115 Ky. 447, 103 Am. St. Rep. 330, was a case where the company's switching

crew placed a torpedo on the track as a prank and to frighten an engineer and fireman as their locomotive passed over, and the court denied liability for the injury inflicted by the explosion, on the ground that the act of the foreman was not within the actual or apparent scope of his authority. In disposing of the case, the court said: "The reason the master is liable for the act of his servant at all is because the servant is acting in that matter in the master's stead and for him. Obviously, if the servant is not acting for the master, he can not be said to be his representative in that act. So, if the servant is charged by the master with the authority to act in his stead in a given matter, the servant's action, or his failure to act, as the case may be, is imputed to the master as if it were his own. This general doctrine must be too well known to require now the citation of authority to support it. But where the servant steps aside from his employment and assumes to act, and does act, solely on his own account, in a matter which the master has no more connection with than if he were the most complete stranger, it would not be logical or fair to make the master vicariously suffer for it."

In the case of *Crelly* v. *M. & K. Telephone Co.*, 84 Kan. 19, 113 Pac. 386, the plaintiff was a telephone operator, and when she was about to quit the service of the company she was assaulted by the manager because she refused to sign a voucher for the amount due her for services. The court held that company was not liable for the reason that the act was not done within the actual or apparent scope of the manager's authority, but solely for his own purposes or in accordance with the promptings of his own impulses.

The Supreme Court of Alabama, in a suit by a servant to recover damages for personal injuries received on account of the act of the superintendent, held that there was no liability, the facts being that the superintendent, in a spirit of fun, punched and pushed the employee and by reason of such act on the part of the superintendent, the employee, who was very ticklish or nervous, threw his

hand into a machine that was in operation. The court said: "That if Cunningham (the superintendent) was guilty of any negligence in the premises it lay in this extraneous act, the evidence shows beyond controversy. That this was not an act of superintendence, we are entirely clear. That a negligent act, although committed by one intrusted with superintendence by the common employer, and while in the exercise of such superintendence, is not an act for which the employer is responsible when it is not an act of superintendence under the statute is clear upon reason and is settled by the authorities." *Western Railway* v. *Milligan,* 135 Ala. 205.

It, therefore, appears to us to be quite clear that, according to the undisputed evidence in this case, viewing it as reflected by plaintiff's own statement of the case, there is no liability on the part of the defendant for the wrongful act of its servants. The act was not within the actual nor apparent scope of the servant's authority and did not constitute a violation, within the meaning of the law, of the master's duty to furnish a safe place to his servant.

The judgment is reversed and the cause dismissed.