Chicago, Rock Island & Pacific Railway Company *v.* Womble.[*]

Opinion delivered November 26, 1917.

1. Master and servant—tortious act of servant—liability of master.—A railroad company is liable for the tortious acts of its servants resulting in the injury of another, if at the time the servant was acting within the scope of his employment, or in the line of his duty.

2. Master and servant—tortious act of servant—injury to third party.—In an action for damages, *held*, the evidence was sufficient to support a finding by the jury that plaintiff, while stealing a ride on defendant's train, was knocked off of the train by defendant's conductor, sustaining the injuries complained of.

3. Master and servant—tortious act of servant—injury to trespasser on railway train.—The conductor on defendant's train,

*Opinion on motion for judgment against the railway company, see page 591, *post.*   (Reporter.)

upon discovering that plaintiff was stealing a ride thereon, knocked him off of the train, plaintiff sustaining injuries. *Held,* under the evidence, the jury had a right to infer that the conductor was acting within the scope of his employment when he knocked plaintiff off the train.

4. Damages—personal injuries—instruction. — In an action against a railroad company for personal injuries, the following instruction on the measure of damages *held* not erroneous; "if the jury find for the plaintiff they will assess his damages at such a sum as will compensate him for the bodily injury sustained, if any; the physical pain and mental anguish suffered and endured by him in the past, if any; and that which he will endure in the future, if any, by reason of said injury; his loss of time, if any, and his pecuniary loss from his diminished capacity for earning money throughout life, if any; and from these, as proven from the evidence, assess such damages as will compensate him for the injuries received."

5. Damages—personal injury action—amount.—Plaintiff, a trespasser on defendant railway's train, was knocked off the train by the conductor, both his legs being crushed, and being later amputated. Plaintiff suffered great pain, and the wounds being slow to heal he will continue to suffer. Plaintiff was thirty-two years old when injured, had an expectancy of 33 9/10 years, and was earning between $60 and $70 per month. *Held,* a verdict for $25,000 compensatory damages was not excessive.

Appeal from Calhoun Circuit Court; *Charles W. Smith,* Judge; affirmed.

*Thos. S. Buzbee* and *H. T. Harrison,* for appellant.

1. It was error to refuse a peremptory instruction for defendant. Plaintiff's story was a fabrication, pure and simple—not even plausible. Even taking his statement as true, he failed to make a case of tort by the conductor within the scope of his employment. 115 Ark. 289; 101 *Id.* 586; 153 S. W. 694; 89 S. E. 490; 144 Fed. 806; 21 S. E. 288; 113 Pac. 386.

2. There was no substantial testimony tending to show that the conductor knocked plaintiff from the train.

3. The court erred in giving instruction No. 4 on the measure of damages. 115 Ark. 119.

4. The verdict is excessive and the result of passion and prejudice. 115 Ark. 101-123; 100 *Id.* 107; 89 *Id.* 522;

84 S. W. 61; 158 Ill. App. 82; 125 Pac. 331; L. R. A. 1915-F. 308-9-10.

*Pace, Seawel & Davis,* for appellee.

1.  There was no error in refusing the peremptory instruction.  There were questions of fact for a jury. 100 Ark. 629; 87 *Id.* 614; 90 *Id.* 131; 74 *Id.* 16.  The jury, by their verdict have settled (1) that appellee was struck with a stick by the conductor which caused the fall and injury; and (2) that he struck him for the purpose of ejecting him from the train and was acting within the scope of his employment.  The law is well settled.  26 Cyc. 1533-5-6; 96 Ark. 364; 42 *Id.* 543; Cooley on Torts, 538; 62 Ark. 116; 75 *Id.* 585; 115 *Id.* 294.  See also 125 Ala. 483; 98 Ga. 751; 74 Neb. 1; 197 S. W. 801; 59 Iowa 428; 68 N. H. 358; 2 Tex. Civ. App. 29; 21 S. W. 179.

The verdict is final.  56 A. L. R. 383; 56 *Id.* 373; 100 Ark. 314; 103 *Id.* 361.

2.  There was no error in giving instruction No. 4 on the measure of damages.  13 Cyc. 145; 60 Ark. 481; 8 R. C. L. 470; 37 Ark. 522; 109 *Id.* 239; 69 *Id.* 632; 53 Ark. Law Rep. 228. See also 30 N. E. 458; 89 N. W. 1100; 40 S. W. 608.

3.  The verdict is not excessive.  93 Ark. 564; 100 *Id.* 437; 115 *Id.* 101; 100 *Id.* 124; 99 *Id.* 280; 54 Ark. Law Rep. 320; 170 Ill. App. 140; 94 Mich. 146; 183 Ala. 138; 56 Ore. 495; 96 Tex. 301; 164 S. W. 870; 104 Minn. 58; 6 Ga. App. 18.

HUMPHREYS, J.  Appellee, telegraph operator at Delmar, boarded appellant's local freight train No. 84, at Biscoe, Arkansas, while on the house track about 150 yards west of the depot, at 8 o'clock p. m. on the 17th day of November, 1915, for the purpose of riding down to Dagmar, six miles east of Biscoe.  He took a position between the tender of the engine and a box car with one foot on the draw-head of each and held to the back of the tender with one hand.  The depot was on the north side of the track.  In appellant's position, his back was

towards the north. The train pulled out of the house track far enough east to clear the switch and this move-ment placed the engine opposite the depot. The train then backed on the main line west for the purpose of connecting with that portion of the train which had been disconnected when the train came into Biscoe from the west. During the backward movement of the train and while it was running smoothly, appellee fell to the track. The wheels of the engine backed over both legs and practically severed the limbs below the knees. There was evidence tending to show that the conductor struck the appellee with a brake stick on the shoulder and back, causing him to dodge, release his hold and fall to the track where he received the injury. Appellee knew the conductor when he saw him, but no personal acquaint-anceship existed between them. They had never had any personal differences, quarrels or altercations. The train-men had not seen the conductor from the time they first backed west from the depot onto the house track until about 10 or 15 minutes after the injury. When first seen by them after the injury, the conductor was at the caboose at the extreme west end of the train with a brake stick in his hand, in a dispute with intoxicated bridge men who were also insisting upon riding the train to Dagmar.

The conductor claimed that he rode the engine as the train backed west to pick up cars in the house track, and checked some cars at the switch; then went to the caboose, while the train was pulling out of the house or side track towards the depot. The brakeman operating the switch, nor the one coupling the cars, nor the engineer nor fireman saw the conductor en route to the caboose from the depot. Appellee admits drinking four bottles of beer during the day. There is evidence tending to show that appellee was drunk immediately before and after boarding the train. There is also evidence tending to show that he was sober at that time. It is conceded that appellee was a trespasser at the time of the injury. Appellant's theory is that appellee fell from the train

on account of drunkenness and received the injury. Appellee's theory is that the conductor remained at the depot while the train backed west onto the house track for the purpose of getting additional cars, and when the train pulled out of the switch east towards the depot and stopped, that the conductor boarded the train with a brake stick in his hand and discovered appellee stealing a ride, knocked him off the train and then proceeded to the caboose where he was found when the injury was reported to him. Appellee was removed from the place where injured to the depot where he remained for two hours. He was then placed on one of the seats in the caboose attached to a freight train and carried to a hospital in Little Rock. The distance was 52 miles, and the journey requires six hours. During the trip, he suffered great pain and it was necessary to give him sedatives all along. When the train jerked and jolted, he would scream out with pain. When informed that his legs would have to be cut off, he began to cry and asked for a pistol to shoot himself. He arrived at the hospital at 4 o'clock in the morning, and about 8 o'clock the following night, his legs were amputated. He remained in the hospital for nine months. At the time of the trial, some two years after the injury, one limb was still raw and the other not entirely well. Appellee was 32 years of age at the time of the injury, and had an expectancy of 33 9-10 years. His average earning capacity was about $65 per month.

Appellee brought suit against the appellant in the Calhoun circuit court for $50,000 compensatory, and $5,000 punitive damages. He recovered a judgment for $25,000 as compensatory damages and $2,500 punitive damages, from which an appeal has been prosecuted to this court.

(1) It is insisted that the court erred in refusing to give a peremptory instruction to the jury in favor of appellant. If there is sufficient legal evidence in the record to sustain the finding of the jury to the effect that Mr. Dale, the conductor, while acting in the scope of his employment, knocked appellee off of the train, which

was under his control, which was the proximate cause of the injury, then appellant was not entitled to a directed verdict in its favor.    It is a settled principle of law in this State that a railroad company is liable for the tortuous acts of its servants resulting in the injury of another, if acting at the time within the scope of his employment, or in the line of his duty.    *Railway Co.* v. *Hackett,* 58 Ark. 381; *St. L., I. M. & S. R. Co.* v. *Grant,* 75 Ark. 579; *St. L., I. M. & S. R. Co.* v. *Pell,* 89 Ark. 87; *St. L., I. M. & S. R. Co.* v. *Robertson,* 103 Ark. 361.    In the instant case, the jury was instructed not to return a verdict for appellee unless a preponderance of the evidence showed that Dale, the conductor, knocked appellee off of the train while acting within the scope of his employment.    It is admitted that the jury was correctly instructed in this regard.

(2)    The contention was made that there is no substantial evidence to show that the conductor knocked appellee off the train; or, if there was substantial evidence to show that fact, then there was no substantial evidence to show that the conductor was acting in the line of his duty at the time.    Appellee testified positively that the conductor knocked him off the train with a brake stick.    It was strictly within the province of the jury to pass upon the credibility of the witness and the weight to be attached to his evidence.    Unless his evidence was contrary to the physical facts, the findings of the jury based on his evidence are conclusive on appeal.    We have examined the evidence very carefully to discover whether the conductor had an opportunity to strike him.    He could have struck appellee while the train was backing west the last time.    There was sufficient lapse of time after the injury and before the conductor was seen at the caboose for him to have gotten off the train and walked to the caboose.    His testimony was accepted by the jury and is not contradicted by the physical facts.    It alone was sufficient to support the verdict under the rule on appeal. His testimony, however, was corroborated to some extent.

When the conductor was found a short time after the injury, he had a brake· stick in his hand such as was· described by appellee. Enough was testified to by parties present at the time to indicate that appellee had been knocked off the train. We think the finding of the jury that the conductor knocked appellee off the train is supported by sufficient evidence of a substantial nature.

(3) It next becomes pertinent to inquire whether there is substantial evidence to show that the conductor was acting in the line of his duty when he struck appellee. It has heretofore been said by this court that, "Whether the particular act of a servant was or was not in the line of his duty is a question for the jury to determine from the surrounding facts and circumstances, * * * *." *St. L., I. M. & S. R. Co.* v. *Hendricks,* 48 Ark. 177. This court has also said that it was clearly in the line of a conductor's duty to expel or remove a trespasser from the train in his charge. *St. L., I. M. & S. R. Co.* v. *Robertson,* 103 Ark. 361.

Dale, conductor, testified that he had the train in charge and that it was a part of his duty not to permit trespassers to ride on the train if he knew it. Appellee testified that the conductor used some rough language which he did not understand and knocked him off the train; that they had no personal acquaintance and that they had never had any differences or altercations; that he was a stranger to the conductor. From the evidence of both, the jury had a right to infer that the conductor was acting within the scope of his employment when he thus removed appellee from the train. There is nothing in the record from which to infer that the conductor was attempting, by the act, to effect some independent purpose of his own. He did not know the appellee. He had no ill feeling or malice toward him or personal quarrel with him. Only a few minutes after the injury, he was found trying to keep objectionable characters off of the train. There is sufficient legal evidence in the record to support the finding of the jury that the con-

ductor was attempting to eject appellee from the train when he struck him.

(4) It is insisted that the court erred in giving the following instruction on the measure of damages: ''If the jury find for the plaintiff they will assess his damages at such a sum as will compensate him for the bodily injury sustained, if any; the physical pain and mental anguish suffered and· endured by him in the past, if any; and that which he will endure in the future, if any, by reason of said injury; his loss of time, if any, and his pecuniary loss from his diminished capacity for earning money throughout life, if any; and from these, as proven from the evidence, assess such damages as will compensate him for the injuries received.''

This court has refused to reverse cases in which an instruction on the measure of damages similar to the present one was given. *St. L., I. M. & S. R. Co.* v. *Cantrell,* 37 Ark. 522; *St. L., I. M. & S. R. Co.* v. *Hydrick,* 109 Ark. 239; *St. L., I. M. & S. R. Co.* v. *Cobb,* 126 Ark. 225. We adhere to our former rulings regarding it.

(5) Lastly, it is insisted that the verdict for compensatory damages for the sum of $25,000 is grossly excessive and the result of passion and prejudice. There is no positive evidence in the record showing that the jury was swayed by passion or prejudice. If any existed, it must be inferred from the amount of the verdict returned. It is evident that the earning capacity of appellant is practically destroyed. This means a loss of between $60 and $70 a month to him for about 33 years. His expectancy at the time of the trial was 33 9-10 years. His mental anguish and physical suffering was almost beyond endurance. As a result of this injury, appellee will necessarily endure a degree of mental anguish all the days of his life. We do not think the amount of the verdict in this particular case is disproportionate to the loss of earning power, and physical pain and mental anguish already endured, and yet to be endured, as established by the evidence. After a full consideration of all

the facts and circumstances in the case, we are not prepared to say that the amount is so excessive as to necessarily indicate that the verdict is the result of prejudice or passion.

No error appearing in the record, the judgment is affirmed.