VAN DALSEN *v.* INMAN.

5-3267                                      379 S. W. 2d 261

Opinion delivered June 1, 1964.

*Gannaway & Gannaway,* for appellant.

*Spencer & Spencer, Gregory & Claycomb,* for appellee.

ED F. McFADDIN, Associate Justice. The Trial Court sustained the defendant's motion for summary judgment, and by this appeal the appellants challenge the correctness of such ruling. The appellants (plaintiffs below) are Brice Van Dalsen and the Railsback Tractor Company (hereinafter called "Railsback"), and the real appellee (which was the defendant below) is Jim Walter Corporation. The action was for personal injuries sustained by Van Dalsem and property damage sustained by Railsback when a car driven by Fred Inman, Sr. collided with the Railsback vehicle. It was alleged that Inman was negligent and that he was at the time the servant of Jim Walter Corporation and acting within the scope of his employment.

In testing the correctness of the ruling of the Trial Court in granting the summary judgment for Jim Walter Corporation, we state the facts in the light most favorable to the appellants, giving them the benefit of all the evidence. Fred Inman, Sr. lived in Stuttgart and was a salesman for Jim Walter Corporation and engaged in selling shell homes. Mr. Inman furnished his own automobile and paid his own expenses, and his only compensation was a commission of approximately $100.00 on each shell home that he sold. The office of Jim Walter Corporation was in Pine Bluff, and at the times here involved Hollis Adams was the manager of the Pine Bluff office and B. J. Weiss was the office secretary. Whenever Mr. Inman had a prospect whom he believed ready to purchase, he contacted Mr. Adams in the Pine Bluff office, who went with Inman to close the sale. Inman was supposed to work every day. He selected his route and the prospects to see, but he kept the Pine Bluff office informed of his whereabouts.

Mr. Inman's wife was in a Little Rock hospital, and about 11:00 A.M. on Tuesday, February 13, 1962, Mr.

Inman and his mother drove in Mr. Inman's car from his home in Stuttgart to visit Mrs. Inman. They reached the hospital shortly after 1:00 P.M. and visited with Mrs. Inman until about 2:00 P.M. From the hospital Mr. Inman and his mother drove to North Little Rock to visit Mr. Inman's sister. At about 4:45 P.M. Mr. Inman said: "Mother, we must be going. I want to go through Pine Bluff and see my boss man." Accordingly, Mr. Inman and his mother drove from Little Rock to Pine Bluff.[1] The office of the Jim Walter Corporation was closed and Mr. Inman left a note under the door which note was to tell Mr. Hollis Adams that Mr. Inman had three named prospects and that Mr. Adams would please meet him at a given place the next morning between 9:00 and 9:30 A.M. in order to close a deal with one of the named prospects.

After leaving the note under the door of the Jim Walter Corporation office in Pine Bluff, Mr. Inman and his mother resumed their return trip to Stuttgart; and at about 6:30 P.M., and outside the city limits of Pine Bluff, his car collided with the Railsback vehicle being driven by Van Dalsen. Mr. Inman and his mother were both killed, apparently instantly. Van Dalsen was injured and the Railsback vehicle was damaged. This action was filed by Van Dalsen and Railsback against Fred Inman, Jr., Administrator of the Estate of Fred Inman, Sr., and also the Jim Walter Corporation. The estate of Inman made no defense (it being stated in the brief that it was insolvent); but the Jim Walter Corporation denied all liability, claiming that Fred Inman, Sr. was not a servant acting within the scope of his employment at the time of the collision. After numerous discovery depositions had been filed, the Jim Walter Corporation moved for summary judgment. The motion was sustained, and the correctness of that ruling as to the Jim Walter Corporation is the sole issue on this appeal.

I. *Summary Judgment Procedure.* By Act No. 123 of 1961 Arkansas adopted Rule 56 of the Federal Rules

---

[1] We take judicial notice of the map of the State (*Bonner* v. *Jackson*, 158 Ark. 526, 251 S. W. 1), and of distances between places (*Heno* v. *Fayetteville*, 90 Ark. 292, 119 S. W. 287.)

of Civil Procedure, which is our summary judgment statute,[2] and is compiled as Ark. Stat. Ann. § 29-211 (Repl. 1962). Some of our cases involving this summary judgment statute are: *Russell* v. *City of Rogers,* 236 Ark. 713, 368 S. W. 2d 89; *Epps* v. *Remmel,* 237 Ark. (Adv. Op.) 391, 373 S. W. 2d 141; and *Jones* v. *Comer,* 237 Ark. 500, 374 S. W. 2d 465. In *Russell* v. *City of Rogers supra,* we said:

"Our recent summary judgment statute, Act 123 of 1961, is a re-enactment of Rule 56 of the Federal Rules of Civil Procedure. Ark. Stat. Ann. § 29-211 (Repl. 1962). It provides that a summary judgment shall be rendered if the pleadings and proof on file show 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' It has been pointed out, under the Federal Rule, that the theory underlying a motion for summary judgment is the same as that underlying a motion for a directed verdict. Moore's Federal Practice (2d Ed.), § 56.02 (10). Hence any testimony that is submitted with the motion must be viewed in the light most favorable to the party resisting the motion, with all doubts and inferences being resolved against the moving party."

In the case at bar the burden rested on the movant, Jim Walter Corporation, to establish that there was no liability on its part under the facts most favorable to the plaintiffs. In other words, under the most favorable view of the facts to the plaintiffs, an instructed verdict would be given in favor of Jim Walter Corporation.

II. *The Scope Of Employment.* With the rule as to summary judgment thus understood, we weigh the evidence in this case; and we reach the conclusion that it establishes, without contradiction, that Mr. Inman was not in the scope of employment of Jim Walter Corporation at the time of the fatal collision, but was on a personal and private mission. In *Sweeden* v. *Atkinson*

---

[2] Sub-section (b) of said Section reads: "For Defending Party. A party against whom a claim, counterclaim, or crossclaim is asserted or a declaratory judgment is sought, may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

*Imp. Co.,* 93 Ark. 397, 125 S. W. 439, Mr. Justice Frauen-thal, speaking for a unanimous Court, stated the following applicable rules:

" 'When a servant acts without reference to the service for which he is employed, and not for the purpose of performing the work of his employer, but to effect some independent purpose of his own, the master is not responsible for either the act or omission of the servant.' . . . .

" 'The act of a servant done to effect some independent purpose of his own, and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is ordinarily held not to be within the scope of his employment as to render his master liable therefor.' "

In *St.L.I.M.&S. Ry. Co.* v. *Robinson,* 95 Ark. 39, 128 S. W. 60, we said:

" 'The true rule is that the master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment as servant. Thus it will be seen that, in order to render the master liable, the act must not only be one that pertains to the business, but must also be fairly within the scope of the authority conferred by the employment.' . . . . 'It will thus be seen that the test of a master's liability is not whether a given act was done during the existence of the servant's employment, but whether it was done while carrying out the object and purpose of the master's business; for, if the act was done without authority and solely for purposes exclusively the servant's, then the master is not liable during such time that such acts are done. During such time he steps aside from his master's business and his employment.' "

And in *Hunter* v. *First State Bank,* 181 Ark. 907, 28 S. W. 2d 812, Justice Hart stated:

". . . the test of a master's liability for the act of a servant is not whether a given act was done during the existence of the servant's employment, but whether it

was committed in the prosecution of the master's business. This rule has been recognized and applied by this court in a suit for damages against the owner of an automobile for injuries sustained by a third person on account of the negligence of the chauffeur.''

To the same effect see also *Ark. Natural Gas Co.* v. *Lee,* 115 Ark. 288, 171 S. W. 93; *C. R. I. & P. Ry.* v. *Womble,* 131 Ark. 411, 199 S. W. 81; *Mullins* v. *Ritchie Grocer Co.,* 183 Ark. 218, 35 S. W. 2d 1010; *Rex Oil Corp.* v. *Crank,* 183 Ark. 819, 38 S. W. 2d 1093; and *Vincennes Steel Corp.* v. *Gibson,* 194 Ark. 58, 106 S. W. 2d 173.[3]

In the case at bar Jim Walter Corporation established that on the day in question Mr. Inman started from his home in Stuttgart on a purely private and personal mission; *i.e.,* to visit his wife in a hospital in Little Rock; that in returning home to Stuttgart from Little Rock he digressed from the said personal and private mission long enough to leave a note under the door of the Jim Walter Corporation in connection with his employment; that Mr. Inman then resumed his private and personal mission to return to Stuttgart with his mother; and that on such personal and private mission he suffered the traffic mishap here involved. In short, Mr. Inman was not ''in the scope of employment'' of Jim Walter Corporation at the time of the fatal collision here involved. He was on a private mission, just as was the driver of the car in the case of *Phillips Motor Co.* v. *Price,* 204 Ark. 827, 165 S. W. 2d 251. In *Healey* v. *Cockrill,* 133 Ark. 327, 202 S. W. 229, the servant sustained a traffic mishap during the time when he had digressed from the scope of employment of the master. In the case at bar, the servant, Inman, had digressed from his personal and private mission long enough to leave a note for his master, but had returned to his personal and private mission at the time of the fatal traffic mishap.

Appellants have cited us to some workmen's compensation cases wherein salesman have been awarded

---

[3] In 52 A.L.R. 2d 287, there is an annotation: "Employer's liability for negligence of employee in driving his own car." This is not in point to our present case, but is mentioned for information purposes.

compensation for injuries sustained while returning home, and it is claimed that these cases govern in the case at bar. Such a workmen's compensation case is *Frank Lyon Co.* v. *Oates,* 225 Ark. 682, 284 S. W. 2d 637. But the liability of the Jim Walter Corporation in the case at bar is to be determined by the "scope of employment" cases involving master and servant, and not by the "arising out of and in the course of employment" rule in workmen's compensation cases. The workmen's compensation cases are not applicable to a master and servant case, such as in the case at bar. The Supreme Court of Wisconsin clearly stated this difference in *Village of Butler* v. *Industrial Comm.,* 265 Wis. 380, 61 N. W. 2d 490, in this language:

"The principles of the common-law doctrine of *'respondeat superior'* of the law of master and servant are inapplicable to workmen's compensation cases. Whether an employee is acting within the scope or course of his employment is usually determinative of the issue of whether his employer should be held liable in damages for his employee's wrongful act, but is not necessarily controlling in determining whether an employer should be held liable under the Workmen's Compensation Act if the employee is injured."

To the same effect see *O'Leary* v. *Brown,* 340 U. S. 504, 95 L. Ed. 483, 71 S. Ct. 470; and *Edwards* v. *Louisiana Forestry Comm.,* 221 La. 818, 60 So. 2d 449.

The Trial Court correctly sustained the motion for summary judgment offered by Jim Walter Corporation.

Affirmed.