RESERVE LIFE INS. CO. v. CHARLES F. HALL, ET AL.

5-4792                                                     437 S.W. 2d 226

Opinion Delivered February 17, 1969

*Rose, Meek, House, Barron, Nash & Williamson* for appellant.

*Smith, Williams, Friday & Bowen,* by *William H. Sutton* for appellees.

FRANK HOLT, Justice.    This case relates to an employee's scope of employment during a lunch hour. Appellant appeals from a judgment based upon a verdict of the jury holding it liable to the appellees for the negligence of appellant's employee in an intersection accident.    The jury found that at the time of the accident the employee, Mrs. Helen Christner, was acting within the scope of her employment.

For reversal appellant contends that there is no substantial evidence that at the time of the accident its employee was acting within the scope of her employment.    We think appellant is correct.

On appeal we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the appellee and affirm the judgment of the trial court if there is any substantial evidence to support the verdict.    *St. Louis Southwestern Railway Co.* v. *Holwerk,* 204 Ark. 587, 163 S.W. 2d 175.

When an employee is engaged in performing services for his employer, the employer is liable for his actions until the servant turns aside from the master's business.    In *Lindley* v. *McKay,* 201 Ark. 675, 146 S.W. 2d 545 (1941), we reaffirmed this well settled rule as stated in *Sweeden* v. *Atkinson Imp. Co.,* 93 Ark. 397, 125 S.W. 439 (1910):

> "* * * And if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business, then the relation of master and servant is for such time, however short, suspended; * * *."

To the same effect, see *Healey* v. *Cockrill,* 133 Ark. 327, 202 S.W. 229 (1918), and *Van Dalsen* v. *Inman,* 238 Ark. 237, 379 S.W. 2d 261 (1964).    With this principle in

mind, we review the evidence with particular reference to *Van Dalsen,* which we consider controlling in the case at bar.

The employee was in charge of the bookkeeping for appellant's Little Rock office at 1515 West Seventh Street. She signed the checks, made the payroll and was in charge of the office when her supervisor was out of the office. One of her duties was to make deposits in the appellant's bank account which was in her name. Most of the time she made the deposit by mail. However, with her employer's knowledge, she would sometimes drive downtown in her own car and make the deposit. She kept the deposit slips in the office until the end of the month when she mailed them to the home office. She took her lunch hour whenever she desired. Her employment did not require her to travel. She provided her own means of transportation, and did not receive any form of reimbursement when she used her car in making bank deposits for the company. She was paid on a monthly basis.

On the day of the accident, appellant's employee left the office about 11:30 a.m. in her own automobile. She drove downtown to her bank where she deposited her salary check. From there she went to another bank where she made a deposit in appellant's account and received a copy of the deposit slip. The employee testified that from this bank she intended to proceed to Mitchell School at Roosevelt and Battery Streets, take her son home, and then return to work. Her child, being in the first grade, was dismissed at 12 o'clock, and since it was raining, she did not want him to walk home. According to Mrs. Christner, as she approached the intersection of Cumberland and Capitol Avenue, she debated whether to turn there but decided instead to continue south on Cumberland to Eighth Street, turn west on Eighth and proceed to Broadway, then out Broadway to Roosevelt and on to Battery where Mitchell School is located, thence to her home which was nearby at Roose-

velt and Marshall. However, her plan was interrupted when she collided with a taxicab at the intersection of Cumberland and East Capitol.

Her immediate supervisor, who was out of the office on the day of the mishap, testified that the only deposits Mrs. Christner was required to make were by mail and that for this purpose she was furnished with envelopes and mail deposit slips. He was aware that on occasion she deposited company funds while on her lunch hour. However, she was not required to do so.

On cross-examination Mrs. Christner stated that she left the office in her car to make her own deposit and to pick up her son at school, and since she was going to be downtown, she decided to make the company's deposit also. Further, she testified:

"Q. So that you had been to Union Bank and deposited your check, dropped by Worthen and made the company's deposit and was there anything else to do for the company at all?

A. No, sir.

Q. Then you had completed whatever you had done for the company, whatever you had to do for the company was done?

A. That is right.

Q. And you were on your way then to Mitchell School?

A. Yes, sir."

The burden of proof was upon appellees to offer some substantial evidence that at the time of the accident appellant's employee was acting within the scope of her employment. When the evidence is viewed most favorably to the appellees, we are of the view that at the time of the accident the appellant's employee, dur-

ing her lunch hour, had turned her attention to and was solely engaged in her own personal affairs—not those of her master's. During this period of time the relationship of master and servant was suspended and the appellant cannot be responsible for her actions.

Reversed and dismissed.

GEORGE ROSE SMITH, J., concurs.

HARRIS, C.J., dissents.

GEORGE ROSE SMITH, Justice, concurring. To me the main problem here is that of deciding which of two diverging precedents we should follow. The majority opinion cites one of those two cases: *Van Dalsen* v. *Inman*, 238 Ark. 237, 379 S.W. 2d 261 (1964). The dissenting opinion discusses the other: *Conway* v. *Hudspeth*, 229 Ark. 735, 318 S.W. 2d 137 (1958).

In my best judgment the *Van Dalsen* case should be controlling. The pivotal point is that there, as here, the entire mission was basically a personal excursion. In *Van Dalsen* the employee left Stuttgart for the purpose of visiting his wife in a Little Rock hospital and then returning to his home in Stuttgart. On the way back, in the court's words, "he digressed from the said personal and private mission long enough to leave a note" under his employer's door in Pine Bluff. Pine Bluff was not on the direct route from Little Rock back to Stuttgart. The accident happened outside the city limits of Pine Bluff, still off the direct route. But the court found that the employee had "resumed his private and personal mission to return to Stuttgart."

In principle that case cannot be distinguished from this one. Here Mrs. Christner was on her lunch hour— a personal excursion, according to the undisputed proof. She digressed to go by the Worthen Bank to make a deposit for her employer, but, just as in the *Van Dalsen*

case, she had resumed her private and personal mission when the accident happened. Moreover, just as in the *Van Dalsen* case, she was at a place where she would not have been except for the business-motivated digression. It is immaterial that, in the language of the dissent, "the route that she was traveling led both to the object of her personal mission [her son's school] and to her employer's place of business," because even if she had testified that she intended to return at once to her office she was still on her lunch hour and therefore not within the course of her employment.

It will be seen that the other precedent, *Conway* v. *Hudspeth*, is distinguishable, because the employee was not upon a mission that was primarily personal. All the pertinent incidents took place during business hours; so there the employee was presumptively engaged in his employer's business from start to finish, unless a personal digression was shown. Thus the reasoning of that case cannot govern this one.

CARLETON HARRIS, Chief Justice. I disagree with the conclusion reached by the majority, as it is my opinion that the question of whether Mrs. Christner was acting within the scope of her employment at the time of the accident was a jury question, and there was substantial evidence to support the jury's finding. This, in my opinion, is not a case where the employee left the office entirely for personal business, and only incidentally transacted some business in behalf of her employer. To the contrary, before Mrs. Christner left the company office, she prepared deposit slips for both her personal account at Union National Bank, and the company account at Worthen Bank, this account also being carried in her name. Accordingly, it appears to me that, when leaving the office, she definitely had a dual purpose in mind. After making her personal deposit she proceeded to the east side of Main Street to make the company deposit at the Worthen Bank. Thereafter, she testified that she intended to proceed to Mitchell

School at Roosevelt and Battery Streets for the purpose of taking her son home, and then to return to work. The company office was located at 1515 West 7th Street. The accident took place at the intersection of Cumberland and East Capitol. Thus, Mrs. Christner had not reached the place where she would, in furtherance of her personal mission, deviate from the route that would take her back to appellant's offices. She was still two blocks north of that point.

I wish to specifically call attention to the fact that Mrs. Christner would *not have been on the east side of Main Street except for the fact that she made the company deposit in the Worthen Bank, i.e.,* the collision would not have occurred had she proceeded from the Union Bank (where she made her personal deposit) to the school to pick up her son.

The importance of the fact that she had not reached the location where the requirements of personal business would require a deviation from the office route, is pointed out in the case of *Conway* v. *Hudspeth,* 229 Ark. 735, 318 S.W. 2d 137. In that case, Conway had asked the trial court for a directed verdict, contending that it had not been established that Conway's employee, Smith, was acting within the scope of his employment when the collision occurred. Smith was employed from time to time to wash cars, and do odd jobs at Conway's place of business. A man named Karns became ill there, and Conway and Smith drove Karns to a hospital, where he obtained medicine. After leaving the hospital, Conway alighted from the car, and instructed Smith to take Karns home, "and come right back." When testifying, Smith said that he drove Karns to his home, and then "I started out to see about my granddad." According to the witness, he was on his way to the grandfather's house when the accident happened. This court said that the trial court was correct in holding that the evidence made an issue for the jury's determination. We said:

"We are unable to say that the undisputed proof required the jury to find that Smith had left the course of his employment. In the first place, the geographical setting is not clearly disclosed by the proof. Conway's used car lot, to which Smith was to return, is in the downtown business district of Marshall, and the collision took place within the city limits, near the western edge of town. We are not told, however, where the Karns house is, except that it is in the north part of town, north of Highway 65. If the house were due north of the point of the accident Smith's deviation from the most direct return route might have been so slight as to support a finding that there had been no departure from the master's business. *Cahill* v. *Bradford,* 172 Ark. 69, 287 S.W. 595.''

There is another interesting, and important, fact mentioned in the *Conway* opinion. This court stated:

"* * * Since both Conway and Smith were interested parties, the jury was not required to accept Conway's uncorroborated statement that he instructed Smith to come right back or to accept Smith's unsupported testimony that he had started to see about his grandfather. *Bullock* v. *Miner,* 225 Ark. 897, 286 S.W. 2d 328. Inasmuch as the route that Smith was traveling led both to the object of his personal mission and to his employer's second place of business, it was for the jury to say which destination Smith had in mind when he began the trip.''

The above statement is particularly *apropos* to the present case. After all, the only evidence that Mrs. Christner had concluded her employer's business, and had started out on her own mission (to pick up her son), was given by Mrs. Christner herhelf, and the jury was not required to accept her uncorroborated statement as to her intentions. Likewise, as already pointed out, the

route that she was traveling led both to the object of her personal mission and to her employer's place of business, and it was therefore for the jury to say which destination Mrs. Christner had in mind when she began the trip.

I respectfully, but earnestly, dissent.