442 F.2d 1270
 LE-HI IMPLEMENT CO. OF MARIANNA, INC., et al., Appellants,
v.
WHITE FARM EQUIPMENT COMPANY (Formerly Oliver Corporation)
and the White Motor Credit Corporation, and Ralph H.
Hineman, Trustee, Appellees, v. Dorothy V. LEACH, Flora J.
Leach, Appellants, John R. Walker, Jr., Trustee, et al., Appellants.
 No. 20526.
 United States Court of Appeals, Eighth Circuit.
 May 17, 1971.
 
 Gerland P. Patten, Little Rock, Ark., for appellants.
 Richard H. Kremer, Memphis, Tenn., for appellees.
 Before GIBSON, HEANEY and BRIGHT, Circuit Judges.
 GIBSON, Circuit Judge.
 
 
 1
 The primary issue in this diversity case is whether the manufacturer, the White Farm Equipment Company (formerly Oliver Corporation), breached its Dealer Contract with its dealer, the LE-HI Implement Company of Marianna, Inc., by allegedly failing to make available its retail credit plan. In an exhaustive and well-reasoned opinion, the District Court for the Eastern District of Arkansas, Judge Oren Harris, held that there was no breach of contract on the part of Oliver and that Oliver and White Motor Credit Corporation were entitled to judgments against LE-HI Implement of Marianna, Inc., LE-HI Implement of Marion (a partnership between J. W. Leach and his brother J. M. Leach, Jr., who were two of the three stockholders in the Marianna LE-HI corporation), and against J. M. Leach, Jr., J. W. Leach and B. D. Moffatt (the third stockholder in the Marianna LE-HI corporation), individually, based on promissory notes executed by the three individuals and their personal guaranty for the Marianna LE-HI corporation's obligations in excess of the notes. We affirm.
 
 
 2
 Judge Harris' Memorandum Opinion, 327 F.Supp. 398, discussed with particularity the complicated factual background of this case and the positions and contentions of the multiple parties. Our review on this appeal is limited to determining whether there is sufficient evidence to support the District Court's findings, viewing the evidence of course in a light most favorable to its findings.[1] Because we think the evidence clearly supports the findings and because we can see no purpose in duplicating the detailed factual discussion presented in Judge Harris' opinion, we will limit our factual recital to those facts essential to an understanding of our disposition of the case.
 
 
 3
 In 1959 the Leach brothers set up a farm equipment dealership known as LE-HI Implement Company No. 1, as a partnership, near Marion, Arkansas. They began a second dealership in the form of a partnership in 1965 at Marianna, Arkansas, known as LE-HI Implement Company No. 2. Both businesses entered into and operated under a standard farm machinery and implement dealer contract with Oliver Corporation.
 
 
 4
 Prior to the summer of 1966, it was discovered that the Marianna LE-HI partnership was approximately $60,000 in debt to Oliver and the White Motor Credit Corporation primarily as a result of sales of machinery out of trust. Following discussions with Oliver, the Leach Brothers and B. D. Moffatt, an experienced finance man, established a new corporation, LE-HI Implement Company of Marianna, Inc., and executed a personal guaranty of its obligations to Oliver and White Motor Credit. The new corporation assumed the inventory of its predecessor, the Marianna LE-HI partnership, and the Marion LE-HI partnership assumed the $63,556.71 indebtedness of the Marianna LE-HI partnership.
 
 
 5
 In late 1966 the new Marianna corporation negotiated the sale of twelve Oliver tractors to Harold Wayne Chipman and James Chipman, two brothers engaged in large-scale farming operations based out of Tuchula, Mississippi. The manufacturer's branch manager cautioned against any credit on this sale and was assured by the dealer that cash would be paid for the machines. Oliver delivered the last of the tractors to the Marianna corporation on March 25, 1967, at which time the corporation became obligated to pay for the tractors under its Dealer Contract. The Chipman brothers unfortunately were unable to pay cash for the entire $120,000 purchase price. The Marianna corporation sought in vain to secure financing for approximately $32,000 of Chipman paper at this late date from local sources of retail financing and stalled for time in the face of Oliver's demands for payment During these latest difficulties, the Marion LE-HI partnership refinanced its delinquent account in the amount of $71,497.64 with Oliver.
 
 
 6
 Finally, in June the Marianna corporation requested the use of the Oliver Retail Credit Plan to finance the Chipman paper. Oliver refused as it had the right to reject retail purchase notes and contracts, solely at its option, under the Plan. The Marianna corporation was thus placed in a most precarious financial position and was desperate to sell the Chipman paper.
 
 
 7
 Since many of the local financing institutions has asked why Oliver or White Motor Credit did not finance the Chipman paper, the corporation wrote Oliver for the purpose of setting to rest any question in the local financing sources' minds that something was wrong either with the Chipman or the Marianna corporation credit rating. Oliver's district credit manager at Memphis interpreted this letter as a plea for help and collusively replied that Oliver did not have a retail finance plan, implying that this was the reason it did not finance the Chipman paper. This misrepresentation proved futile as the corporation, even armed with Oliver's letter, was still unable to sell the paper.
 
 
 8
 Oliver placed the Marianna corporation on a C.O.D. basis on October 16 after discovering that it, like its predecessor, had been making sales out of trust. On October 25, the Marianna corporation, the Marion partnership, Moffatt and the Leach brothers executed settlement notes in the aggregate amount of $180,302 at 8 per cent interest to Oliver and White Motor Credit Corporation, with a deed of trust covering 320 acres given as security. On December 12 Oliver wrote both the Marianna corporation and the Marion partnership informing them of its intent to terminate each's Dealer Contract unless payment of past due items was made in the amount of $29,761.46 by the corporation and in the amount of $8,638.60 by the Marion partnership on or before December 22. The Marianna corporation, the Leach brothers and Moffatt filed the instant suit on December 21 in the Arkansas state courts, which was removed to the federal district court by Oliver under 28 U.S.C. 1441 and 1446 based on diversity of citizenship. 28 U.S.C. 1332. On January 23, 1968, the Marion partnership paid Oliver the principal and interest on a $16,519.26 note, one of the four executed on October 25. On March 11 the Court entered orders for delivery to Oliver and White Motor Credit with regard to personalty subject to the security agreements, and repossession of some personalty was accomplished.
 
 
 9
 The District Court found that there was no breach of contract and, at the request of all parties, made the following accounting: (1) the three unpaid October 25 notes were valid and enforceable, and interest and attorneys' fees were allowed thereon; (2) the personal guaranty of the individual plaintiffs was valid and enforceable; (3) the October 25 deed of truct was valid and enforceable; (4) the March 11 Orders of Delivery were sustained. The Court further ordered that if $165,511.79 of the total money judgment of $205,821.53 in favor of Oliver and White Motor Credit was not paid within 25 days of the date of judgment, the 320 acres covered in the security agreement should be sold.[2]
 
 
 10
 Although there are very few equities favoring any of the parties in this case, we think it clear that there was no breach of contract. The record indicates that Oliver's letter to the Marianna corporation denying the existence of its retail credit plan was part of a scheme concocted by Marianna corporation and Oliver to enable Marianna to unload the remaining Chipman paper on unsuspecting lenders. We think the evidence amply supports the District Court's finding that both companies played fast and loose with the contractual relationship for the above reason and that both parties understood that Oliver's misrepresentation did not go beyond the Chipman transaction.
 
 
 11
 It is equally clear that Oliver's refusal to finance the Chipman paper when the Marianna corporation finally made the request some three months after the sale and delivery of the last tractor to the Chipmans was not a breach of contract. First, under its retail credit plan Oliver had the right to reject retail paper, solely at its option. Secondly, the Marianna corporation failed to forward credit reports to Oliver and, most critically, failed to perfect a valid enforceable security interest in the tractors-- two prerequisites for financing under the Plan. Indeed, the corporation's contention that Oliver failed to make available retail financing to it borders on the frivolous when it is recalled that, in addition to inventory financing, Oliver had extended $180,302 of credit to the corporation as a result of sales out of trust and other dilinquencies.
 
 
 12
 The plaintiffs' claim that the District Court erred in its accounting is not borne out in the record. Plaintiffs argue that the Marianna corporation was improperly denied an $11,688.67 credit for parts and that it should have received an $86,087.97 credit for replevined machinery instead of the $83,500 allowed, and that the Marion partnership was improperly denied a credit of $24,000 for spare parts. The District Court properly disallowed the corporation's alleged parts credit and the partnership's alleged spare parts credit because these items were never returned as required by the terms of paragraph 26 of the Dealer Contract, which required the dealer to submit a list of parts to Oliver within thirty days from the date of termination. Termination of both the corporation's and the partnership's dealerships occurred on January 22, 1968, in accordance with Oliver's letter of December 12,[3] and neither dealer submitted the required list of parts within thirty days thereafter. The record also supports the $83,500 credit allowed the corporation for the replevined machinery. This amount was mutually agreed upon by counsel for both sides and the dealer readily condeded that some parts were missing from the equipment.
 
 
 13
 Judgment affirmed.
 
 
 
 [1]
 Since the federal and Arkansas standard is identical, we need not determine whose standard governs. E.g., Reserve Life Ins. Co. v. Hall, 246 Ark. 183, 437 S.W.2d 226, 227 (1969)
 
 
 [2]
 All parties interested in the real estate were made defendants in this action
 
 
 [3]
 Under section 25 of the Dealer Contract, Oliver could terminate the dealership without cause by giving thirty days notice