Cite as 2024 Ark. App. 599

# ARKANSAS COURT OF APPEALS
## DIVISIONS I & II
### No. CV-23-234

| | |
|---|---|
| REBECCA SKALA, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF SIR CHRISTOPHER EARNEST WALKER SKALA, DECEASED, AND GUARDIAN OF THE ESTATE OF XAVIOR ROBERT DAWSON SKALA, A MINOR; AND JAMES GARDNER, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF TAMMY GARDNER, DECEASED<br><br>APPELLANTS | Opinion Delivered December 4, 2024<br><br>APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT [NO. 32CV-21-245]<br><br>HONORABLE HOLLY MEYER, JUDGE |
| V. | |
| COMFORT SYSTEMS USA, INC.; AND COMFORT SYSTEMS USA (ARKANSAS), INC.<br><br>APPELLEES | SUBSTITUTED OPINION ON DENIAL OF REHEARING<br><br>REVERSED AND REMANDED |

**CINDY GRACE THYER, Judge**

This case arises from a fatal motor vehicle accident involving a daycare van and a vehicle driven by an employee of appellee Comfort Systems USA (Arkansas), Inc. It comes to us as an interlocutory appeal from an Independence County Circuit Court order granting summary judgment in favor of Comfort Systems USA (Arkansas), Inc., and its parent

company, Comfort Systems USA, Inc.[1] On appeal, appellants argue (1) that there are genuine issues of material fact in dispute that preclude summary judgment; (2) that the circuit court erred in concluding that the going-and-coming rule precluded liability; and (3) that the circuit court erred in granting summary judgment on appellant's direct-liability claims. We reverse and remand.

I. *Facts and Procedural History*

On September 23, 2021, Cody Conboy, an employee of Comfort Systems Arkansas, was driving from his home in Greenbrier, Arkansas, to a job site in Ash Flat when the vehicle he was driving struck a fifteen-passenger van. Tammy Gardner, the driver of the van, was killed in the collision as was five-year-old Christopher Skala. Christopher's three-year-old brother, Xavior, was injured in the accident.

On October 28, 2021, Rebecca Skala,[2] the minor children's mother, filed a complaint for damages against Conboy for his negligence and against Comfort Systems Arkansas and Comfort Systems USA, alleging both direct and vicarious liability against them. Her complaint sought compensatory and punitive damages.

Conboy answered and generally denied the allegations in the complaint. The next day, he filed answers to requests for admissions propounded by Skala. Relevant to this

---

[1]The companies will be hereinafter referenced individually as Comfort Systems Arkansas and Comfort Systems USA and collectively as Comfort Systems.

[2]Skala filed suit in her capacity as special administrator of the estate of Sir Christopher Earnest Walker Skala and as guardian of Xavior Robert Dawson Skala, a minor.

appeal, he admitted he worked for Custom Systems Arkansas; denied he was negligent in the use and operation of the vehicle he was driving on September 23, 2021; and denied he was liable for the Skalas' injuries.

The Comfort Systems entities filed a joint answer admitting that the accident occurred, that Conboy was involved in the accident, and that Conboy was an employee of Comfort Arkansas "at certain points in time," but they generally denied the other allegations contained therein. Comfort Systems then specifically asserted that Conboy was not acting in the course and scope of his employment with either entity at the time of the motor vehicle crash. It further admitted that Conboy's job duties included working at job sites in various locations and that Conboy had received compensation or reimbursement for travel expenses.

The Comfort Systems entities separately responded to Skala's requests for admissions. Relevant to this appeal, in their responses to the requests for admission, both entities denied that Conboy was negligent in the use and operation of the vehicle he was driving on September 23, 2021, and denied that Conboy was liable for any injuries sustained. Finally, both entities denied that Conboy was its employee on September 23, 2021.

On March 24, 2022, Tammy Gardner's husband, James Gardner,[3] filed a separate wrongful-death action against Conboy for his negligence and against Comfort Systems USA and Comfort Systems Arkansas, alleging both direct and vicarious liability against them. Like

---

[3]He filed suit in his capacity as special administrator of the estate of Tammy Gardner, deceased.

the Skala complaint, Gardner's complaint sought both compensatory and punitive damages. Conboy and Comfort Systems answered, reiterating their general denials.

The Gardner case was subsequently consolidated with the Skala case.[4]

The parties subsequently filed cross-motions for summary judgment. Appellants' motion against Comfort Systems Arkansas claimed that there was no genuine issue of material fact as to whether Conboy was acting within the scope of his employment at the time of the crash. They argued Conboy's job required him to travel to assigned job sites and that Conboy had no control over the job assignment. On the day of the accident, Conboy had been assigned to work at the Emerson factory construction project in Ash Flat. They argued that Comfort Systems also controlled the time Conboy was to arrive at the location—7:00 a.m.—and that this time was set regardless of the location of the job site. It was further undisputed that the only reason Conboy was on that road at the time of the accident was to travel to the job site.

Additionally, appellants argued that there was no genuine issue of material fact that Conboy's trip to Ash Flat was reasonably contemplated as part of his employment and in furtherance of his employer's interest. When applying for the job as a welder, Conboy was asked if he could travel if the job required it, and he was required to sign an authorization allowing Comfort Systems to obtain his driving record. Another requirement for a first-year welder was the "ability to travel, as needed, for projects." In fact, appellants alleged that in

_____

[4]The cases were consolidated under the Skala case number. For ease of reading, the Skala and Gardner parties will collectively be referred to as appellants.

4

the months leading up to the collision, Conboy was primarily working at assigned jobs in Arkadelphia, Ash Flat, and Oklahoma. Given the considerable amount of travel required to work at those assigned job sites, Conboy considered traveling as part of his job at Comfort Systems. Because traveling was such an intrinsic part of Comfort Systems' employees' jobs, appellants maintained that Comfort Systems had developed a travel policy (either travel time or per diem) to pay for travel time for its employees and that travel from an employee's home to a job site was contemplated under the company's travel policy.[5] And while Conboy received a verbal warning for requesting the per diem instead of travel time on the day of the accident, there was no evidence that Conboy had actually made that request, and even so, that fact was irrelevant as to whether he was acting in the scope of his employment at the time of the collision.

Conboy moved to adopt the appellants' motion for summary judgment.

---

[5]The travel policy was as follows:

**TRAVEL TIME:**  The Company recognizes that out of town work can place hardship on employees required to be on site, therefore in order to minimize this employee are eligible for paid drive time of ½ hour per day for distances greater than 40 miles from their home or from the office, whichever is less, or for one hour per day of drive time for distances greater than 50 miles from their home or office, whichever is less. Employees residing greater than 70 miles from the site may be paid $100.00/night per diem or they may decide to commute from their home to the job site in exchange for paid drive time. *If the driving distance from an employee's home address to the job site is greater than 100 miles, they may be paid the time it takes to drive.* If an employee accepts per diem they must stay out of town. If it is discovered that an employee is commuting to the site and accepting per diem, this may be grounds for dismissal. The company reserves the right to modify the above options according to the situation. Travel time will be paid at the regular hourly rate and will not count towards a full 40 hour week.

In its motion for summary judgment, Comfort Systems claimed that Conboy was not performing an act in furtherance of his employer's business or in line with his duties at the time of the accident; thus, he was not acting within the scope of his employment at the time of the incident. As a result, the doctrine of respondeat superior was inapplicable. Comfort Systems asserted that Conboy was hired as a welder and that driving to work was not a part of his official duties—Comfort Systems required only that he arrive on time to perform his job; the means of getting there was entirely up to Conboy.

Comfort Systems further argued that Arkansas, like other jurisdictions, should adopt the going-and-coming rule from workers' compensation cases to preclude respondeat superior liability. It contended that the rationale for the restriction of liability imposed by the going-and-coming rule, whether in workers-'compensation or tort law, is that the employee's commute is not "an act in furtherance of the master's business or in line with the servant's duties." Comfort Systems further asserted that the fact that Conboy had violated its travel policy by accepting per diem while still commuting to the job site did not prevent application of the going-and-coming rule.

Appellants responded that the going-and-coming rule was not controlling. They noted that Comfort Systems had admitted that no Arkansas appellate court had ever applied the going-and-coming rule in tort cases, and in fact, the Arkansas Supreme Court had clearly held in *Van Dalsen v. Inman*, 238 Ark. 237, 379 S.W.2d 261 (1964), that workers' compensation rules, like the going-and-coming rule, were not applicable to tort cases. They further argued that Comfort Systems had failed to rebut the proof that Conboy was engaged

6

in the transaction of business that he had been assigned by Comfort Systems or that his trip to Ash Flat on the morning of the wreck was reasonably contemplated as part of his employment and in furtherance of Comfort Systems' interest.

Appellants reiterated their claim that Comfort Systems was liable for Conboy's negligent actions through the doctrine of respondeat superior due, in part, to Comfort Systems' business model of sending its employees to remote locations to perform skilled labor on specific projects and also due, in part, to its travel policy. They also contended that, if the court found that the going-and-coming rule were to apply, Conboy's travel fell within well-established exceptions to that rule. They argued that Conboy was not simply "on his way to work," he was on a specific work assignment journeying to an entirely different region of the State. They argued that when the journey itself is part of the service, the going-and-coming rule does not apply because persons traveling are generally within the course of their employment from the time they leave home on a business trip until they return because they have no fixed place of employment.

Appellant Gardner filed a separate response to Comfort Systems' motion for summary judgment, alleging there were controverted facts sufficient to defeat summary judgment. He claimed that the issue of whether Conboy was "on the job" or "under the control" of Comfort Systems was controverted, in part, because he was issued a written warning for violating Comfort Systems' travel policy, which indicated Comfort Systems' intent to exercise control over out-of-town travel. Comfort Systems also took a direct interest in safety issues related to travel by its employees, evidenced by its request for release of the

7

employee's driving record and its decision to obtain these records. He argued there would be no grounds for doing so if travel by Comfort Systems employees was not within the scope of their employment. He further argued that Comfort Systems benefited from a business model whereby they could deploy their employees to different worksites. He then adopted the arguments set forth by the Skala appellants in their response to the motions for summary judgment.

On January 5, 2023, the circuit court issued a letter opinion stating it was denying appellants' motion for partial summary judgment as well as Conboy's motion for summary judgment. The court, however, stated it was granting Comfort Systems' motion for summary judgment.

On February 21, 2023, the court entered findings of fact and conclusions of law granting partial summary judgment in favor of Comfort Systems. In granting summary judgment, the court concluded that Conboy was not acting in the course and scope of his employment at the time of the accident because Conboy was not engaged in the transaction of business for Comfort Systems at that time and because his travel was not reasonably contemplated as part of his employment with Comfort Systems. It further found that Comfort Systems had no control over Conboy's travel decisions and did not benefit from his travel. In so finding, the court applied the workers' compensation going-and-coming rule, opining that the Arkansas Supreme Court would likely extend the rule to respondeat superior liability cases because it had become the majority rule in other jurisdictions. The court determined that when traveling to a job site, Conboy was on his own time. It then

concluded that because Conboy was not acting in the course and scope of his employment with Comfort Systems Arkansas at the time of the accident, appellants' direct-liability claims against Comfort Systems must fail as a matter of law. Likewise, the court found that Conboy was not an employee of Comfort Systems USA and, thus, that appellants' direct-liability claims against it must also fail as a matter of law.

Appellants then sought an Arkansas Rule of Civil Procedure 54(b) certification, which was granted. This timely appeal followed.

## II. *Argument*

On appeal, appellants argue that the circuit court erred in granting summary judgment on both their vicarious and direct-liability claims against Comfort Systems. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee*, *supra.* However, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003).

On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Greenlee, supra.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.* However, when there is no material dispute as to the facts, we determine on review whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate. *Town of Lead Hill v. Ozark Mountain Reg'l Pub. Water Auth.*, 2015 Ark. 360, at 3, 472 S.W.3d 118, 122. In other words, when the facts are not at issue but possible inferences therefrom are, the court will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000); *Mattox v. Main Entrance, Inc.*, 2021 Ark. App. 382.

Here, appellants' claims were brought under both direct and vicarious-liability theories. As for their vicarious-liability claims, appellants argue that the circuit court improperly applied the going-and-coming rule applicable in workers' compensation cases, and because there were genuine issues of material fact in dispute as to whether Conboy was acting within the scope of his employment at the time of the accident, summary judgment was inappropriate. As for their direct-liability claims, appellants assert that Comfort Systems never moved for summary judgment on their direct-liability claims; therefore, the court

10

should not have awarded summary judgment on that basis. These will each be addressed in turn.

## A. Vicarious Liability

### 1. *Going-and-coming rule*

Appellants claim that the circuit court erred as a matter of law in concluding that the going-and-coming rule precluded liability because that rule is not applicable outside the workers' compensation context. They are correct.

As a general rule in workers' compensation cases, an employee traveling to and from the workplace is not within the course of his or her employment. *Absolute Care Mgmt. v. Stacy*, 2018 Ark. App. 166, 545 S.W.3d 791. Generally, this rule applies to those claimants who have fixed hours and places of employment and ordinarily prevents an employee from recovering benefits for an injury sustained while the employee is going to or coming from his place of employment. *Id.*; *Pratt v. Bentonville*, 2021 Ark. App. 184. The rationale for the rule is that an employee is not within the course of employment while traveling to or from his job. *Absolute Care Mgmt.*, *supra.*

In granting partial summary judgment in this case, the circuit court concluded that the going-and-coming rule in workers' compensation cases should be extended to respondeat superior cases and determined that if presented with this issue, the Arkansas Supreme Court would do the same. We disagree, because in *Van Dalsen v. Inman*, 238 Ark. 237, 242–43, 379 S.W.2d 261, 265 (1964), our supreme court held the exact opposite.

In *Van Dalsen*, Inman, a traveling salesman from Stuttgart, was involved in a motor vehicle accident. On the day of the accident, Inman drove to Little Rock to visit his wife in the hospital. On his way home, he stopped at his employer's office in Pine Bluff and left a note regarding work. He then proceeded home, and an accident occurred wherein Inman died, Van Dalsen was injured, and a vehicle owned by Railsback Tractor Company was damaged. Suit was filed against Inman's estate and his employer, and the circuit court subsequently entered summary judgment in favor of Inman's employer.

In analyzing the issue, our supreme court stated:

> Appellants have cited us to some workmen's compensation cases wherein salesmen have been awarded compensation for injuries sustained while returning home, and it is claimed that these cases govern in the case at bar. Such a workmen's compensation case is *Frank Lyon Co. v. Oates*, 225 Ark. 682, 284 S.W.2d 637. But the liability of the Jim Walter Corporation in the case at bar is to be determined by the 'scope of employment' cases involving master and servant, and not by the 'arising out of and in the course of employment' rule in workmen's compensation cases. The workmen's compensation cases are not applicable to a master and servant case, such as in the case at bar.

*Van Dalsen*, 238 Ark. at 242–43, 379 S.W.2d at 265.

The workers' compensation case cited by the court in *Van Dalsen* for the proposition that workers' compensations cases did not govern in respondeat superior cases, *Frank Lyon Co.*, involved the application of the going-and-coming rule. Thus, our supreme court has spoken on this issue and has already rejected the application of the going-and-coming rule in respondeat superior cases. We are bound to follow the precedents set by the supreme court and are powerless to overrule its decisions. *Krieger v. State*, 2022 Ark. App. 456, 655 S.W.3d 321; *Brewer v. State*, 68 Ark. App. 216, 6 S.W.3d 124 (1999).

*2. Disputed facts precluding summary judgment*

Our analysis does not end there, however. This court has held on numerous occasions that it will affirm the circuit court's judgment if it reached the right result, even though it may have announced the wrong reason. *See Warr v. Williamson*, 359 Ark. 234, 195 S.W.3d 903 (2004); *Bright v. Zega*, 358 Ark. 82, 186 S.W.3d 201 (2004); *Middleton v. Lockhart*, 355 Ark. 434, 139 S.W.3d 500 (2003); *Dovers v. Stephenson Oil Co., Inc.*, 354 Ark. 695, 128 S.W.3d 805 (2003). Here, the court held there were no genuine issues of material fact in dispute and that judgment was appropriate as a matter of law. Thus, the question then becomes whether there were genuine issues of material fact left to be decided or whether judgment could be rendered as a matter of law.

Under the doctrine of respondeat superior, an employer may be held vicariously liable for the acts of its employee if the employee was acting within the scope of his employment at the time of the incident. *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997). The question of whether an employee is acting within the scope of employment depends on whether the individual is carrying out the object and purpose of the enterprise as opposed to acting exclusively in his own interest. *Id.*; *J.B. Hunt Transp., Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995). When an overlap of the business and the personal are present in an employee's actions, an employer may be vicariously liable under the doctrine of respondeat superior, depending on the circumstances. *Doss, supra.* Our supreme court has held that an employee is not acting within the scope of his duties if his act was "purely

13

personal"; thus, the question of an employer's liability revolves around whether the employee's act was purely personal.

Here, the facts themselves are not in dispute. On September 23, 2021, Conboy was employed by Comfort Systems Arkansas as a welder.[6] He did not have an office or a fixed location where his services for Comfort Systems Arkansas were to be performed. Rather, Comfort Systems Arkansas would deploy him to various locations to perform work under its contracts. As such, traveling was listed as an "additional requirement" of his employment as a pipe welder, and he was required to authorize and pass a driving-records check as part of the employment process.[7] Finally, Comfort Systems Arkansas, recognizing that out-of-town work could place hardships on employees required to be on site, created a travel-time policy.

On the other hand, Conboy's principal duties as a welder had nothing to do with driving, and there was no evidence that, other than commuting to work, he was required to drive as part of his employment with Comfort Systems Arkansas. It is further undisputed

---

[6]We note that in its response to appellants' requests for admissions, Comfort Systems Arkansas denied that Conboy was its employee on that date. However, it does not appear to deny his employment, at least for purposes of its summary-judgment motion.

[7]As for Comfort Systems Arkansas's request for his driving history, the employee policy specifically stated that the employee driving record would be obtained before driving was allowed and would be rechecked annually. It also prevented placement of an employee in a "driving position" if the employee had a DUI or DWI conviction within the previous three years and prohibited the operation of a "company vehicle" if the employee had three moving violations and/or accidents (with no more than one being an accident) within the previous three years. It noted that the foreman would be assigned a company vehicle to be used on the job and solely for the company business.

that on the morning of the accident, Conboy's sole purpose for being on the highway was to drive to his place of employment.

Here, while there is no material dispute as to the facts, "reasonable minds" could draw "reasonable" inconsistent hypotheses from them. Reasonable minds could conclude that Conboy was a traveling employee because he had no fixed place of employment, was required to travel to whatever job site his employer specified, was compensated for his time in doing so, and was required to have a clean driving record as a condition of his employment. Reasonable minds could also conclude, however, that the clean driving record was not a condition of his employment as a welder and applied only in the event he was given a driving position and that his place of employment, while somewhat variable, was fixed for the duration of each individual project; thus, travel was not a condition of his employment. Because reasonable minds could reach different conclusions as to the inferences to be drawn from the facts, summary judgment was inappropriate.

## B. Direct Liability

The court also granted summary judgment to Comfort Systems on appellants' direct-liability claims. Appellants had claimed that Comfort Systems Arkansas had a pattern and practice of overworking its employees, rendering them unsafe to drive and a hazard to the traveling public. They further claimed that Comfort Systems Arkansas failed to have policies and procedures in place to prevent its drivers from driving in an unsafe manner. The circuit court found that because Conboy was not acting in the course and scope of his employment with Comfort Systems Arkansas, appellants' direct-liability claims failed as a matter of law.

15

More specifically, the court found that because Conboy's job did not include driving and he was not on the job at the time of the accident, there can be no direct liability for failing to "train, supervise, monitor, and control" Conboy. As to Comfort Systems USA, the circuit court found that it was not Conboy's employer and that the claims against it thus failed as a matter of law.

Appellants correctly note in their brief that the Comfort Systems never moved for summary judgment on their direct-liability claims. When ruling on a motion for summary judgment, a circuit court cannot grant relief beyond that prayed for in the motion. *Young v. Staude*, 280 Ark. 298, 657 S.W.2d 542 (1983); *Berry v. Slack*, 2023 Ark. App. 415, 677 S.W.3d 222; *see also Matsukis v. Joy*, 2010 Ark. 403, 377 S.W.3d 245 (reversing the circuit court's sua sponte grant of summary judgment). Thus, we hold that the circuit court erred when it sua sponte granted summary judgment to Comfort Systems.

Reversed and remanded.

HARRISON, C.J., and GRUBER, BARRETT, WOOD, and HIXSON, JJ., agree.

*Denton & Zachary, PLLC*, by: *Joe Denton*, *Justin C. Zachary*, and *Andrew Norwood*; and *Murphy, Thompson, Arnold & Skinner*, by: *J.T. Skinner* and *Bill Arnold*, for appellants.

*Watts, Donovan, Tilley & Carson, P.A.*, by: *David M. Donovan* and *Staci Dumas Carson*, for appellees.